1   ANTONIO M. LAWSON, SBN 140823
    LAWSON LAW OFFICES
2   7700 Edgewater Drive, Ste 255
    Oakland, CA  94621
3   (510) 878-7818
    (510) 878-7006 (fax)
4
    JACK W. LEE, SBN 71626
5   SEAN TAMURA-SATO, SBN 254092
    MINAMI TAMAKI LLP
6   360 Post Street, 8th Floor
    San Francisco, CA 94108
7   (415) 788-9000
    (415) 398-3887 (fax)
8
9   SHEILA Y. THOMAS, SBN 161403
    LAW OFFICES OF SHEILA THOMAS
10  5260 Proctor Ave.
    Oakland, CA  94618
11  (510) 339-3739
    (510) 339-3723 (fax)
12
    KENDRA L. TANACEA, SBN 154843
13  198 Corbett Ave
    San Francisco, CA 94114
14  (415) 934-8844
    (415) 934-8840(fax)
15
16  Attorneys for Plaintiffs and the Class

17              UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION
18

| | |
|---|---|
| 19 RON MOWDY, JOAQUAN HARVEY, individually named and on behalf of all others similarly situated, | Case No. 06-cv-05682 EMC |
| 20 | **NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS'** |
| 21 Plaintiffs, | **FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE** |
| 22 vs. | **PAYMENTS** |
| 23 BENETO BULK TRANSPORT, KENAN ADVANTAGE GROUP, INC., | Date:    March 9, 2012 |
| 24 | Time:   1:30 p.m. Dept:  5, 17th Floor |
| 25 Defendants. | Judge:  Hon. Edward M. Chen |

26
27
28

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on March 9, 2012 at 1:30 p.m., or as soon thereafter as the

4

matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the above-

5

captioned Court, located at 450 Golden Gate, San Francisco, CA, Plaintiffs Ron Mowdy and

6

Joaquan Harvey ("Plaintiffs") will and hereby do move this Court for an Order awarding

7

attorneys' fees, costs, and class representative service payments.  This motion is based on the

8

accompanying Notice of Motion and Motion; the Declarations of Antonio M. Lawson, Jack W.

9

Lee, Bernella Osterlund, and Richard Pearl in support thereof; the Joint Stipulation of Settlement

10

and Release between Plaintiffs and Defendants; Plaintiffs' Motion for Preliminary Approval of

11

Settlement and Certification of Settlement Classes ("Motion for Preliminary Approval"); the

12

previously submitted declarations in support of Plaintiffs' Motion for Preliminary Approval; the

13

pleadings, papers, and the entire record herein, and on such other evidence or argument as may

14

be presented to the Court at the hearing of this motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2   I.      INTRODUCTION.................................................................................................1

3   II.     ARGUMENT.......................................................................................................2

4
5          A.     Class Counsel are Entitled to Recover Attorneys' Fees from the
                 Common Fund.............................................................................................2

6
7          B.     All Factors Support the Award of Class Counsel's Requested
                 Attorneys' Fees...........................................................................................4

8                 1.     The Results Achieved...............................................................4

9                 2.     The Risk of Litigation...............................................................6

10
11                3.     The Contingent Nature of the Fee and the Financial Burden
                        Carried by Class Counsel..........................................................9

12                4.     The Skill Required and the Quality of Work...........................10

13                5.     Awards Made in Similar Cases................................................12

14                6.     Private Contingent Fees Also Support Class Counsel's Fee Request......13

15
16                7.     Class Counsel's Request for Attorneys' Fees is Also Appropriate
                        Under the Lodestar/Multiplier Method Cross-Check................14

17         C.     Class Counsel's Costs are Reasonable and Were Incurred to Benefit
                 the Class....................................................................................................16

18
19         D.     The Service Awards to the Class Representatives are Fair and Reasonable........17

20  III.    CONCLUSION..................................................................................................19

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
AND CLASS REPRESENTATIVE SERVICE PAYMENTS

1

**TABLE OF AUTHORITIES**

2

**Cases:**

3

*Boeing Co., v. Van Gemert*, 444 U.S. 472 (1980)...................................................................3, 15

4

*Brinker Restaurant Corp. v. Superior Court*,
165 Cal.App.4th 25 (2008), *rev. granted*, 85 Cal.Rptr.3d 688 (2008)............................................8

5

*Brinkley v. Public Storage, Inc.*,
167 Cal.App.4th 1278 (2008), *rev. granted*, 87 Cal.Rptr.3d 674 (2009)........................................8

6

*Briggs v. U.S.*, 2010 WL 1759457 (N.D. Cal. 2010)....................................................................15

7

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001).....................................................19

8

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)............................................14

9

*Chu v. Wells Fargo Investments, LLC,* 2011 WL 672645 (N.D. Cal. Feb. 16, 2011)...............5

10

*Edmonds v. United States*, 658 F.Supp. 1126 (D.S.C. 1987)..........................................................10

11

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1995).........................................................................3

12

*Glass v. UBS Fin. Serv., Inc.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)............5, 19

13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)............................................................................4, 14

14

*Hopson v. Hanesbrands Inc.,* 2009 WL 928133 (N.D.Cal. 2009).................................................5, 17

15

*In re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989).............................3, 12

16

*In re Nuvelo Sec. Litig.*, 2011 U.S. Dist. LEXIS 72260 (N.D. Cal. July 6, 2011).........................12

17

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)...................................................6

18

*In re Oracle Sec. Litig.*, 131 F.R.D. 688 (N.D. Cal. 1990).............................................................3

19

*In re Quantum Health Resources, Inc.*, 962 F.Supp. 1254 (C.D. Cal. 1997)..................................9

20

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)..............3, 9

21

*Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614 (9th Cir. 1993)..................................................16

22

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)..................................14

23

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367(N.D. Cal. Feb. 2, 2009).....................4, 10, 13

24

*Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003).........................................................12

25

*Navarro v. Servisair*, 2010 WL 1729538 (N.D. Cal. April 27, 2010)...........................................16

26

*Paul, Johnson*, *Alston, & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)..............................3, 12

27

28

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
AND CLASS REPRESENTATIVE SERVICE PAYMENTS

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841,
(E.D. Cal. Nov. 14, 2007)...................................................................................13

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. 2010)..............19

*Staton v. Boeing Corp.*, 327 F.3d 938 (9th Cir. 2003)......................................17

*Thieriot v. Celtic Ins. Co.*, 2011 U.S. Dist. LEXIS 44852
(N.D. Cal. Apr. 21, 2011)...................................................................................12

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).......................19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..........................3, 4, 6, 12, 13, 14, 16

*Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667
(N.D. Cal. Apr. 1, 2011)...................................................................................13

**Statutes:**

29 U.S.C. § 216(b)...........................................................................................2

**Rules:**

Fed. R. Civ. P. 23(h)...........................................................................2, 7, 10, 18

**Regulations:**

29 C.F.R. § 782.2(a)...........................................................................................7

**Other Authorities:**

Lester Brickman,
*ABA Regulation of Contingency Fees:  Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247
(1996)...........................................................................................................14

Harry Rubenstein, Alba Conte & Herbert Newberg,
 4 *Newberg on Class Actions*, (4th ed.)...............................................................12, 16

Thomas E. Willging, Laura L. Hooper & Robert J. Niemic,
*Empirical Study of Class Actions in Four Federal District Courts*:  *Final Report to the Advisory
Committee on Civil Rules*; Federal Judicial Center (1996)...........................................13

# I.    INTRODUCTION

After over five years of intense, hard-fought litigation, including fully briefing a pending Ninth Circuit appeal, Plaintiffs Ron Mowdy, Joaquan Harvey, and the certified classes ("Plaintiffs") have secured a $14,000,000.00 settlement in this wage-and-hour class and collective action.  Plaintiffs respectfully submit this application for attorneys' fees, costs, and class representative service payments in connection with the proposed settlement resolving Plaintiffs' federal and state law wage and hour claims.  This excellent result reflects the skill, expertise, and hard work of Plaintiffs and their counsel over an extended time period.  This settlement was achieved despite vigorous defenses and numerous substantive issues raised by Beneto Bulk Transport and Kenan Advantage Group, Inc. ("Defendants" or "Beneto/KAG") that made the ultimate success of the action difficult to predict.  The benefit to the class members in this action is significant, especially when compared to the risks of continued litigation.

Plaintiffs' attorneys ("Class Counsel") have pursued this litigation on a purely contingent basis since its inception.  To date, Class Counsel have collectively spent over 6280 hours of uncompensated professional time litigating this case.  Class Counsel have also advanced out-of-pocket costs of $151,879.30, all with the real risk of non-recovery.

This case was initially filed as a putative class and collective action on September 15, 2006.  On October 31, 2011, the Court preliminarily approved the proposed settlement in this matter and ordered the parties to provide notice to the approximately 1600 class members regarding its terms.  On or about November 30, 2011, the settlement administrator, Gilardi & Co. LLC, mailed notice packages to the class members.  Declaration of Bernella Osterlund ("Osterlund Dec."), ¶ 3.  These notices informed class members that they have until January 30, 2012 to request exclusion from the settlement or to lodge an objection.  *Id.*.  Plaintiffs submit this Motion prior to the deadline for class members to "opt-out" or object to the settlement in order to provide class members with full information about the terms of the proposed allocation of attorneys' fees and costs.

Class Counsel seek fees under the "common fund" approach.  Specifically, Class Counsel request attorneys' fees in the amount of $3,850,000, or 27.5% of the Gross Settlement Amount, to be divided amongst Class Counsel based on their reasonable lodestars.  Class Counsel also respectfully request reimbursement of litigation costs in the amount of $151,879.30.  Class Counsel's request is supported by their efforts in litigating this case and successfully negotiating a class and collective action settlement that provides substantial benefit to all Beneto/KAG drivers covered by the settlement.  The amount of attorneys' fees requested is consistent with the fee awards in similar cases in this Circuit, and is reasonable when compared to Class Counsel's regular lodestar rates.

Plaintiffs further request class representative service payments of $40,000 to Ron Mowdy and $30,000 to Joaquan Harvey for their unique contributions to this case.  But for their willingness and courage to speak out about wage law violations, this case might not have been brought.  In addition, they have donated their time and effort, endured risks and economic costs to them and their families, and executed full general releases of all claims against Defendants.  The requested service payments are comparable to class representative awards in other similar cases and are thus fair and reasonable.

## II.   ARGUMENT

### A.   Class Counsel are Entitled to Recover Attorneys' Fees from the Common Fund

Recovery of fees is sought here under the "common fund" approach, but is also permissible by statute.  Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties' agreement."  The Court may also award attorneys' fees and costs pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"):  "The court in such action shall in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

Defendants have agreed to pay Plaintiffs' attorneys' fees out of the $14,000,000.00 Gross

2

Settlement Amount.  Joint Stipulation of Settlement and Release between Plaintiffs and Defendants (the "Settlement Agreement") at ¶ 14(h).  The Court-approved Notice of Proposed Class and Collective Action Settlement, and Hearing Date for Final Court Approval of Settlement (the "Class Notice") informed class members that Class Counsel would seek attorneys' fees out of the Gross Settlement Amount.  Osterlund Dec., Exh. A.

The United States Supreme Court has stated that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."  *Boeing Co., v. Van Gemert*, 444 U.S. 472, 480 (1980).  This doctrine is founded upon the principle that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The Court has discretion to calculate an award of reasonable attorneys' fees based on the percentage-of-the-fund or lodestar methods.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Courts in this District have opined that the percentage-of-recovery method is preferable to the lodestar method because it aligns the interests of Plaintiffs' attorneys directly with those of the class.  *In re Oracle Sec. Litig.*, 131 F.R.D. 688, 689 (N.D. Cal. 1990); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1377-79 (N.D. Cal. 1989); *see also Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1995).  This method encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; neither party has incentive to "churn" a case, and it also reduces the demands on judicial resources.  *Id.*

When clients do not pay an hourly fee to their counsel, they typically negotiate a contingent fee agreement where counsel's fee is based upon a percentage, generally 33%-40%, of any recovery.  The percentage-of-the-fund method mirrors this aspect of the market, and thus reflects the fee that would have been negotiated by the class members in advance.  *See, e.g.*, *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

For the foregoing reasons, the Court should use the "common fund" approach in awarding

attorneys' fees to Class Counsel.  However, the lodestar calculation is a useful cross-reference to ensure that the fee award is reasonable, as discussed *infra*.  *Vizcaino*, 290 F.3d at 1047.

**B.     All Factors Support the Award of Class Counsel's Requested Attorneys' Fees**

Pursuant to the percentage-of-the-fund method, Class Counsel requests that the Court award attorneys' fees of 27.5% of the $14,000,000 Gross Settlement Amount, or $3,850,000.

Courts in this Circuit have held that the most important factors in determining attorneys' fees in class action settlements are (1) the degree of success of the litigation, (2) the magnitude of the risk counsel undertook, (3) the skill required and quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, and (5) awards made in similar cases. *See Vizcaino,* 290 F.3d at 1048-50 (upholding a 28% fee award in an employment law case); *see also Knight v. Red Door Salons, Inc.*, 2009 WL 248367 at *5 (N.D. Cal. Feb. 2, 2009). Consideration of these factors in this case reinforces the reasonableness of Class Counsel's requested fee.

**1.     <u>The Results Achieved</u>**

A critical factor in determining the amount to award as attorneys' fees is the success of the litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  The magnitude of the recovery for the class reveals that this litigation was clearly successful. The proposed settlement amount of $14,000,000 provides significant relief to class members.

Given that there are approximately 1612 class members in this case, the Gross Settlement Amount per class member is approximately $8,684.86.  If the Court grants all requested payments for attorneys' fees and costs, class representative and deponent service awards, settlement administration, and payments to the California Labor and Workforce Development Agency ("LWDA"), the average share per class member (prior to employer and employee payroll taxes) will be approximately $6,113.23.  Even assuming that none of the approximately 1,612 class members opt out of the settlement, this translates to a per-shift recovery of approximately

1  $10.20 if all requested payments are ordered (not including the 1.25 per shift weighting provided

2  for those who previously opted in as FLSA class members).[1]

3          This per-class-member recovery is comparable to, or slightly above, recoveries in similar

4  wage and hour class actions.  *See, e.g. Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645

5  (N.D. Cal. Feb. 16, 2011) (Patel, J.); *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476

6  (N.D. Cal. Jan. 26, 2007) (Chesney, J.); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133 (N.D.

7  Cal. April 3, 2009) (Laporte, J.).  In *Chu*, plaintiffs alleged that defendant Wells Fargo

8  Investments, Inc. violated state and federal wage and hour laws regarding overtime pay, meal

9  periods, and rest periods.  *Chu*, 2011 WL 672645 at *1.  On February 16, 2011, the Northern

10  District of California Court granted final approval of a $6.9 million settlement on behalf of 2,752

11  financial service representative class members, which amounted to a per-class-member recovery

12  of $2,507.26, prior to deduction for attorneys fees' and costs, class representative awards, and

13  administrative costs.  *Id.* at *6.  *Glass* involved a plaintiff class of stockbrokers alleging unpaid

14  overtime wages under FLSA and state law, and improper wage deductions.  2007 U.S. Dist.

15  LEXIS 8476 at *2-3.  The Court granted final approval of a class settlement providing an average

16  payment of approximately $3,162.00 to class members submitting claims forms.  *Id.* at *15-16.

17  In *Hopson*, plaintiffs alleged overtime, meal period, and rest period violations on a class-wide

18  basis.  *Hopson*, 2009 WL 928133 at *1.  The Northern District Court granted final approval of a

19  class settlement providing class members with an average recovery of $1,568.44.  *Id.* at *7.  The

20  Gross Settlement Amount of approximately $8,684.86 per class member in this case dwarfs many

21  recent wage and hour class action settlements, and thus fully supports Class Counsel's request for

22  attorneys' fees.

23          It is highly significant that this is not a claims-made settlement.  All class members will

24  instead be mailed Settlement Award checks without the necessity of filing claims, and no part of

25

26  [1] According to Defendants' records, Class Members worked a total of 966,374 shifts during the
    class period.  Lawson Attorney Fee Dec., ¶ 20.

27

28

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
AND CLASS REPRESENTATIVE SERVICE PAYMENTS

the Gross Settlement Amount will revert or be returned to Defendants (unless a driver who previously opted in to the FLSA class now chooses to opt out of the settlement).  Settlement Agreement at ¶ 14(c)-(d).

Class Counsel also negotiated a comprehensive settlement administration package to ensure that class members received notice of the proposed Settlement.  *Id.* at ¶ 14(j), 15, 17.  This included a procedure whereby the Settlement Administrator, Gilardi & Co., LLC, ran a check of class members' addresses prior to mailing of the class notice against those on file with the United States Postal Service's National Change of Address List, and re-mailing class notice packets returned undeliverable after identifying new addresses through the use of a third party locator service.  *Id.* at ¶ 17; Osterlund Dec. ¶ 3-5.  Class Counsel have taken all reasonable measures to ensure that class members receive actual notice, and will receive payment for their share, of the Settlement.

Accordingly, the excellent results of the litigation support Class Counsel's request for attorneys' fees.

### 2.    The Risk of Litigation

Wage and hour class and collective actions, by their nature, involve a high level of risk. Any law firm undertaking representation of over sixteen hundred affected employees in a wage and hour action must be prepared to make a tremendous investment of time, energy, and resources without a guarantee of compensation.  The demands and risks of this type of litigation overwhelm the resources – and deter the participation – of many smaller firms who practice in the area of labor and employment law.

The fact that this complex class and collective action may well have resulted in no recovery for Plaintiffs and class members is a significant factor favoring the award of attorneys' fees.  *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048).  The issues in this case depended heavily upon the facts gathered from scores of individual employees, and constantly evolving areas of the law.  Defendants were

represented by highly skilled counsel who vigorously defended their clients.  Defendants' were

represented by global law firms, including Morgan, Lewis & Bockius LLP and Sheppard, Mullin,

Richter & Hampton LLP, with hundreds of attorneys in nationwide offices.  Declaration of

Antonio M. Lawson in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and

Class Representative Service Payments ("Lawson Attorney Fee Dec."), ¶ 11.  Moreover,

Defendants vehemently denied liability and the appropriateness of class and collective action

certification on both factual and legal grounds.  Lawson Attorney Fee Dec., ¶ 11.

Defendants' Rule 23(f) permissive interlocutory appeal of the Court's order on class

certification is currently pending.[2]  While Plaintiffs were confident that they would prevail before

the Ninth Circuit, Plaintiffs believe that it would have take more than a year from the date of oral

argument for the Court of Appeals to issue its ruling.  During settlement negotiations, Plaintiffs

also took into account the ordinary risks inherent in any pending appeal and the fact that, even if

successful, a request for *en banc* review would likely follow.  The delay involved in awaiting a

Ninth Circuit ruling, as well as the risks of the appellate process, are significant factors in

Plaintiffs' determination that the proposed settlement is in the best interests of the class.

Another major point of contention in this case involved the Motor Carrier Act exemption

from overtime pay under the Fair Labor Standards Act.  Beneto/KAG argued that it was excused

by the Motor Carrier Act exemption from having to pay overtime to class members.  Lawson

Attorney Fee Dec., ¶ 22.  Defendants argued that drivers either do, or could reasonably be

expected to, drive across state lines, and/or haul products that were in a continuous stream of

interstate commerce.  *See* 29 C.F.R. § 782.2(a).  Making such a determination at trial would

require a great deal of data analysis, expert and third party discovery and testimony, and

extensive legal analysis.  Lawson Attorney Fee Dec., ¶ 22.  While Plaintiffs strongly believed

that they would have prevailed on this issue at trial, there was a significant risk in proceeding

through motions for summary judgment and trial on this issue.  *Id.*   This is particularly true

---

[2] Oral argument on this appeal has been stayed pending final approval of the proposed settlement.

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
AND CLASS REPRESENTATIVE SERVICE PAYMENTS

because the federal law interpreting the Motor Carrier exemption to the FLSA is unsettled.  *Id.*

For the second major issue in the case, Beneto/KAG denied that it owed class members backpay for missed meal breaks and rest breaks, and asserted that class members were in fact permitted to take such breaks.  *Id.* at ¶ 23.  Plaintiffs' meal breaks and rest break claims involved a long-standing legal controversy regarding the nature and extent of an employer's duty "to provide" breaks under California law.  *See, e.g.*, *Brinkley v. Public Storage, Inc.,* 167 Cal.App.4th 1278 (2008), *rev. granted*, 87 Cal.Rptr.3d 674 (2009); *Brinker Restaurant Corp. v. Superior Court*, 165 Cal.App.4th 25 (2008), *rev. granted*, 85 Cal.Rptr.3d 688 (2008).  The California Supreme Court heard oral argument in *Brinker* on November 8, 2011, but has not yet issued its decision and has accepted supplemental briefing as of this writing.  Without clarity from the state high court, Plaintiffs' meal and rest period claims presented a high level of uncertainty for both parties in this litigation.

Finally, Beneto/KAG denied that it owed current and former employees for "off-the-clock" work on grounds that it paid drivers for all hours worked.  Lawson Attorney Fee Dec., ¶ 24.  Plaintiffs believed that Defendants' actual policy and practice was to discount non-driving work time when calculating drivers' compensation.  *Id.*  However, Plaintiffs acknowledge that calculating damages for their "off-the-clock" claim would likely have required a time-consuming analysis of the hours worked by the class.  *Id.*

Given the uncertain status of these issues, further litigation would surely be hard-fought, and would involve hundreds of additional attorney hours and significant costs.  Moreover, a final resolution of this already lengthy case would not come for several more years, particularly given the pending Ninth Circuit appeal.  Plaintiffs also recognize the inherent problems of proof and the risks of litigation, especially in complex actions such as this.  Plaintiffs' failure to prevail on any one of these issues at trial could have resulted in a recovery that was a fraction of the proposed settlement, or no recovery at all.  Even if Plaintiffs had prevailed at trial, an appeal would have almost certainly followed.  Such an appeal would have meant that payments to class members

1   would only occur, if at all, after several more years of delay.

2          Given these numerous hurdles, the risk of this litigation was significant for Plaintiffs and

3   Class Counsel.  Accordingly, Class Counsel's requested  fees are fair and reasonable.

4          **3.     The Contingent Nature of the Fee and the Financial Burden Carried
                     by Class Counsel**

5          The contingent nature of Class Counsel's fee arrangement is another factor supporting

6   their fee request.  Courts have recognized the need to reward counsel who accept cases on a

7   contingent fee basis because of the risk of non-payment they face.  *In re Quantum Health

8   Resources, Inc.*, 962 F.Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon

9   receiving a favorable result for the class, an attorney should be compensated both for services

10  rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case").

11         Class Counsel have received no fees or reimbursement of expenses for their efforts since

12  filing this lawsuit in September 2006.  Lawson Attorney Fee Dec., ¶ 29; Declaration of Jack W.

13  Lee in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Class

14  Representative Service Payments ("Lee Attorney Fee Dec."), ¶ 13.  Class Counsel assumed the

15  risk that they would not receive any payment for litigating this case, and would not be reimbursed

16  for the considerable out-of-pocket costs expended.  Moreover, Class Counsel have been forced to

17  forgo participation in other, potentially more lucrative, cases in order to devote significant

18  resources to this matter.  Lawson Attorney Fee Dec., ¶ 36; Lee Attorney Fee Dec., ¶ 20.  It is

19  daunting indeed for any private counsel to front costs, endure years of litigation, and continue to

20  pay normal staffing costs in any class action where the risks of non-payment are very real.

21         In the absence of a contingent fee arrangement, this matter simply could not have been

22  brought.  Named Plaintiffs did not have the resources to advance the necessary attorneys' fees

23  and costs required in this matter.  Lawson Attorney Fee Dec. ¶ 37.  Contingent fees that exceed

24  the market value of those services if rendered on a non-contingent basis are accepted by this

25  Circuit as a legitimate way of assuring competent representation for Plaintiffs who could not

26  afford to pay on an hourly basis.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at

27

28

1299, 1300-01 ("[I]n the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

The contingent nature of the fee agreement and the financial burden carried by Class Counsel thus support awarding Class Counsel the requested attorneys' fees.

### 4.    The Skill Required and the Quality of Work

Negotiating this settlement required the skill of experienced counsel.  Wage and hour class and collective actions of this type are ordinarily complicated and time-consuming.  The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight*, 2009 WL 248367 at *6 (citing *Edmonds v. United States*, 658 F.Supp. 1126, 1137 (D.S.C. 1987)).  Plaintiffs' claims – alleging unpaid overtime, the denial of rest breaks and meal breaks, and failure to pay drivers for work actually performed before and after they get into their trucks - involved complex and hotly disputed legal issues and fact-specific arguments.  Class Counsel have extensive experience with these issues, acquired in the course of litigating several similar class action cases for drivers in the fuel transportation industry.  Lawson Attorney Fee Dec., ¶ 6-10; Lee Attorney Fee Dec., ¶ 6; *see also* Declaration of Antonio Lawson in Support of Plaintiffs' Motion for Class Certification, Docket No. 152 (November 9, 2009) (describing Class Counsel's experience in class actions and complex litigation).  Class Counsel successfully drew upon this experience to aggressively prosecute this matter and withstand all efforts by Defendants to derail this litigation.  Lawson Attorney Fee Dec., ¶ 18.

Plaintiffs have interviewed hundreds of current and former Beneto/KAG drivers and secured over 50 declarations regarding the allegations in this case.  *Id.* at ¶ 16.  Plaintiffs sought a temporary restraining order regarding Defendants' contacts with putative class members.  Docket No. 29 (September 13, 2007).  Plaintiffs successfully achieved conditional certification of the FLSA overtime claim, and defeated Defendants' motion to de-certify the collective action.  Docket No. 125 (March 31, 2008); Docket No. 192 (July 8, 2010).  Plaintiffs also achieved Rule

10

1   23 class certification of their state law claims for all class members.  Docket No. 192 (July 8,

2   2010).

3           The Settlement was reached only after Class Counsel engaged in extensive discovery in

4   this matter.  Plaintiffs took FRCP 30(b)(6) depositions in June and July 2009 of Beneto/KAG

5   regional managers Chet Friday, Craig Moore, William Nelson, and Ted O'Neill.  Lawson

6   Attorney Fee Dec., ¶ 12.  Plaintiffs deposed four Beneto/KAG drivers from whom Defendants

7   secured declarations.  *Id.*  Plaintiffs also defended the depositions of Class Representatives Ron

8   Mowdy and Joaquan Harvey and ten members of the plaintiff class.  *Id.*  The parties also engaged

9   in extensive written discovery.  Defendants produced hundreds of thousands of documents, and

10  Plaintiffs devoted substantial resources to reviewing these documents.  *Id.* at ¶ 13.  Plaintiffs also

11  inspected hard-copy time and payroll records at Defendants' on-site warehouse in West

12  Sacramento, CA.  *Id.*

13          Further, Plaintiffs have devoted substantial time and resources to third party discovery in

14  this matter, particularly regarding the potential effect of ethanol delivery on Plaintiffs' FLSA

15  overtime claim, and arguments that transportation of ethanol constituted engagement in

16  "continuous" interstate commerce.[3]  *Id.* at ¶ 14.  Plaintiffs issued deposition subpoenas and

17  *subpoenas duces tecum* to three ethanol producers and two operators of ethanol storage facilities

18  around the country.  *Id.*  Plaintiffs engaged in extensive meet and confer sessions regarding this

19  discovery, reviewed hundreds of documents produced by these third parties, and deposed a

20  corporate designee of Cargill, Inc. in Minneapolis, Minnesota on issues relating to the

21  transportation and sale of ethanol into California.  *Id.*

22          As a result of the sustained effort in litigating this case for over five years, Plaintiffs and

23  Class Counsel were able to negotiate the proposed settlement with full knowledge and

24  appreciation of the factual and legal issues underlying all claims and defenses, and the strengths

25  and weaknesses of Plaintiffs' case.  *Id.* at ¶ 18.

26  _____

27  [3] Plaintiffs also retained a biofuels expert, Mr. Raul Iyer, to provide his expert opinion regarding
    the ethanol industry.

28  

11

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
AND CLASS REPRESENTATIVE SERVICE PAYMENTS

The proposed settlement in this case was reached only through sustained negotiation efforts by Class Counsel.  Class Counsel engaged in settlement negotiations with Beneto/KAG for over two-and-a-half years with the assistance of two highly experienced and respected class action mediators.  *Id.* at ¶19.  Class Counsel attended two mediations in 2009, and then continued with intermittent settlement negotiations through the assistance of Mr. Mark S. Rudy, Esq.  *Id.*  In the months leading up to the execution of the Settlement Agreement, Class Counsel expended significant resources engaging in settlement discussions facilitated by Mr. Rudy.  *Id.*  Through this intensive negotiation process, Class Counsel successfully negotiated an agreement on the terms of the Settlement Agreement on or about August 29, 2011.  *Id.*

Class Counsel' sustained effort in litigating this matter for over five years, and their skill in negotiating this substantial settlement, provides ample justification for their requested attorneys' fees.

### 5.     <u>Awards Made in Similar Cases</u>

The percentage-of-the-fund requested is in line with awards obtained in other major class action cases, and are thus a fair "market rate."  *Vizcaino*, 290 F.3d at 1050.  The Ninth Circuit's benchmark for attorneys' fees in common fund class action settlements is twenty-five percent (25%).  *Id.* at 1047-48; *Paul, Johnson*, 886 F.2d at 272-73.  The percentage is adjustable, either up or down if the Court concludes that "the benchmark is unreasonable under the circumstances" and articulates its method for arriving at the percentage actually awarded.  *Paul, Johnson*, 886 F.2d at 272-273.

Attorneys' fees awards of up to one-third of the settlement fund are common in federal court class actions.  William Rubenstein, Alba Conte & Herbert Newberg, 3 *Newberg on Class Actions*, § 14.6 (4th ed.) ("*Newberg*"); *see also e.g., In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding attorneys' fees of 32.8% of the common settlement fund); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir, 2003) (affirming attorneys' fees award of 33% of settlement amount); *In re Nuvelo Sec. Litig.*, 2011 U.S. Dist. LEXIS 72260 at *7-8 (N.D. Cal. July 6, 2011)

(affirming attorneys' fees award of 30% of settlement amount); *Thieriot v. Celtic Ins. Co.*, 2011 U.S. Dist. LEXIS 44852 (N.D. Cal. Apr. 21, 2011) (affirming attorneys' award of 33% of settlement amount).

Empirical studies of attorneys' fees awards also support Class Counsel's fee request. The Federal Judicial Center has issued a report highlighting a mean percentage-of-the-fund rate of 27% and a median rate of 29% for fee awards in class action settlements approved by the Northern District between 1992 and 1994. T. Willging, L. Hooper & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts*: *Final Report to the Advisory Committee on Civil Rules*; Federal Judicial Center (1996).

In *Vizcaino*, an employment law case, the Ninth Circuit surveyed 34 class action fee awards across the nation that involved the use of the percentage-of-the-fund method. 290 F.3d at 1052-54. The decisions from the Ninth Circuit involved awards of 16.5 to 37.0% of the common fund. *Id.* Based on this analysis, the Ninth Circuit in *Vizcaino* upheld a 28% fee award. *Id.*

Class Counsel's request for 27.5% of the common fund is also consistent with attorneys' fees awards in other wage and hour class actions. *See e.g., Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *83-84 (N.D. Cal. Apr. 1, 2011) (Spero, J.) (awarding fees of 42% of settlement amount); *Knight*, 2009 WL 248367 at *8 (Conti, J.) (awarding 30% of settlement amount as attorneys' fees); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 at *4 (E.D. Cal. Nov. 14, 2007) (awarding 33% of settlement amount as attorneys' fees).

Based on awards made in similar cases, as well as the excellent result achieved for class members in this matter detailed *supra*, the modest increase requested by Class Counsel is well-justified.

**6.     Private Contingent Fees Also Support Class Counsel's Fee Request**

Class Counsel's requested fees are also reasonable when compared to customary private contingency fee agreements. While evidence of such private agreements is not determinative, it

can be "probative of the fee award's reasonsableness." *Vizcaino*, F.3d at 1050.  The rates in such

agreements serve as an additional factor considered by courts in determining the percentage to

award.  *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 772 n. 3 (11th Cir. 1991)

(citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  This is

especially the case where, as here, counsel's acceptance of the case precluded them from

accepting private contingency work.  Lawson Attorney Fee Dec., ¶ 36; Lee Attorney Fee Dec., ¶

20.

     In private contracts, the typical contingency fee rate is between 33% and 40% of the

recovery, and private cases do not face the same risks, expenses, and difficulties faced by

attorneys representing a class.  *See* Lester Brickman, *ABA Regulation of Contingency Fees:*

*Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247, 248 (1996).  Thus, the private market rate

for contingency fee attorneys also validates Class Counsel's request for an award of 27.5% of the

Gross Settlement Amount.

### 7.    Class Counsel's Request for Attorneys' Fees is Also Appropriate Under the Lodestar/Multiplier Method Cross-Check

     While the percentage-of-the-fund method is commonly used by Courts to calculate the

amount of attorneys' fees awarded, the lodestar method may also be used as a cross-check to

assure that the fee award is reasonable.  *Vizcaino*, 290 F.3d at 1047.  A lodestar cross-check

involves examining the time expended by counsel, counsel's market rate, and the appropriateness

of a multiplier to verify the reasonableness of the percentage recovery sought.  *Id.* at 1050.  In

determining attorneys' fees under the lodestar approach, courts generally begin by multiplying

the number of hours reasonably expended in the litigation by a reasonable hourly rate.  *Hensley v.*

*Eckerhart*, 41 U.S. 424, 433 (1983).

     As of January 10, 2012, Class Counsel and associated co-counsel have expended a total of

6,280.6 hours, which amounts to a lodestar of $2,754,171.  Lawson Attorney Fee Dec., ¶ 31.

Class Counsel's respective hours and lodestars are as follows:

    //

| Law Firm | Hours | Lodestar |
|----------|-------|----------|
| Lawson Law Offices | 2,199.6 | $829,767.00 |
| Minami Tamaki LLP | 2,716.8 | $1,108,641.00 |
| Law Offices of Sheila Thomas | 242.5 | $163,688.00 |
| Law Offices of Kendra L. Tanacea | 528.9 | $289,063.00 |
| Lewis Feinberg Lee Renaker & Jackson, P.C. | 100.1 | $43,358.50 |
| A.J. Kutchins | 452.6 | $294,190.00 |
| Mari Mayeda | 40.1 | $25,463.50 |
| **TOTAL** | **6,280.6** | **$2,754,171.00** |

*See* Lawson Attorney Fee Dec., ¶ 31, Exh. 1; Lee Attorney Fee Dec., ¶ 15.

These hours and fees do not include future work that needs to be completed, such as following up with class members through administration of the Settlement and attending the final approving hearing.  These future hours (which Plaintiffs estimate to be in excess of 125 hours) should be taken into account in considering Class Counsel's request.

A summary of all of the hours, hourly rates, and total lodestars for all timekeepers is attached as Exhibit 1 to the Declaration of Antonio Lawson and Exhibit 1 to the Declaration of Jack W. Lee, filed concurrently herewith.[4]  The hourly rates listed in these Exhibits are Class Counsel's regularly hourly rates and are consistent with the rates of counsel and support staff in the local legal community with similar experience, reputation, and ability.  Declaration of Richard Pearl in Support of Plaintiffs' Motion for Attorneys' Fees; *see also* Lawson Attorney Fee Dec., ¶ 34; Lee Attorney Fee Dec., ¶ 18.

Further, it is appropriate for the Court to perform the lodestar crosscheck using Class Counsel's regular hourly rates, as it is "a fair assumption that counsel set their rates based upon a reasonable evaluation of the market rates of comparably experienced attorneys and staff members in this district."  *Briggs v. U.S.*, 2010 WL 1759457 at *11 (N.D. Cal. 2010).  The lodestar rate

---

[4] Class Counsel have compiled their contemporaneous daily time entries and will submit these voluminous detailed records at the Court's request.

and amount "presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).

Class Counsel's lodestar rates are also validated by the fact that Class Counsel have substantial experience in litigating collective and class action cases.  Lawson Attorney Fee Dec., ¶ 5-10; Lee Attorney Fee Dec., ¶ 4-7.  Class Counsel have also previously litigated similar class claims on behalf of drivers in the petroleum trucking industry.   Lawson Attorney Fee Dec., ¶ 6-10; Lee Attorney Fee Dec., ¶ 6.  Moreover, as set out above, 1) this class and collective action involved complex legal and factual issues, 2) Class Counsel diligently and efficiently litigated this case; and 3) the Settlement resulted in substantial relief to the class.  Based on these factors, Class Counsel's lodestar rates are entirely reasonable.

The lodestar "multiplier" is calculated by dividing the proposed fee award by the lodestar.  In this case, the lodestar multiplier is 1.40.  This multiplier is reasonable as "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Newberg* (3rd ed.), § 14.05 at 14-5; *Vizcaino*, 290 F.3d at 1051 (affirming district court's conclusion that multiplier of 3.65 was reasonable).  This lodestar multiplier is also consistent with multipliers awarded by courts in other wage and hour class actions recently litigated by Class Counsel.  Lawson Attorney Fee Dec. at ¶ 7.

The lodestar cross-check thus confirms that Class Counsel's requested attorneys' fees are reasonable and should be granted.

### C.    Class Counsel's Costs are Reasonable and Were Incurred to Benefit the Class

The Settlement Agreement provides that Class Counsel may be compensated for costs and expenses incurred in litigating this case.  Settlement Agreement at ¶ 14(h).  Class Counsel are permitted to seek recovery of costs and expenses in addition to attorneys' fees. *Navarro v. Servisair*, 2010 WL 1729538, at *4 (N.D. Cal. April 27, 2010).

As of January 10, 2012, Class Counsel's litigation costs total $151,879.30.  Lawson

16

Attorney Fee Dec. at ¶ 35; Lee Attorney Fee Dec., ¶ 19.  Class Counsel have incurred significant costs in this case, including expert witness costs, factual research, legal computer research, filing of pleadings and motions, photocopying documents, travel, courier charges, and mediator costs. *Id*.  Categorized summaries of these costs are attached to the Lawson Attorney Fee Dec. at Exhibit 2 and the Lee Attorney Fee Dec. at Exhibit 2.  All of these costs were necessary in connection with resolution of this litigation and are costs regularly deemed reimbursable common fund costs in this District.  *Id.*, *Hopson v. Hanesbrands Inc.,* 2009 WL 928133, at *13 (N.D.Cal. 2009) (holding that the "filing fee, Westlaw charges, Pacer charges, courier charges, mediation costs, travel costs, class investigation costs, and transcript fees" are reasonable and reimbursable from the common fund).

Thus, the Court should grant Class Counsel's request for reimbursement of litigation costs in the amount of $151,879.30.

**D.      The Service Awards to the Class Representatives are Fair and Reasonable**

In their Motion for Preliminary Approval, Plaintiffs requested that the Court award service payments in the amount of $40,000 to Ron Mowdy and $30,000 to Joaquan Harvey. Plaintiffs believe that these service payments are fair and reasonable given the time and effort expended by the class representatives, as well as the risks and the economic costs to them and their families that have resulted from their service.  By way of this Motion, Plaintiffs reiterate their request that the Court grant the requested service payments.

According to the Ninth Circuit, ". . .named plaintiffs . . . are eligible for reasonable incentive payments.  The district court must evaluate their awards individually, using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.'"  *Staton v. Boeing Corp.,* 327 F.3d 938, 977 (9th Cir. 2003) [citations and internal alterations omitted].

1
2
3
4
5
6
7
8
9
10

 Plaintiffs' requested Class Representative payments are fair and reasonable because the Class Representatives were instrumental in this litigation and in achieving the Settlement in this case.  Both of the Class Representatives have invested a great deal of personal time and effort into the investigation, prosecution, and settlement of the case.  Lawson Attorney Fee Dec. at ¶ 26. The Class Representatives have contacted other Beneto/KAG drivers and worked to keep them informed about the status of the case.  *Id.*  The Class Representatives have responded immediately when contacted by counsel for information or other assistance.  *Id.*  As part of the discovery process, both Mr. Mowdy and Mr. Harvey were deposed by Defendants.  *Id.*  They also provided Class Counsel with requested documents, declarations, and real-time reports on changing company policies and practices,.  *Id.*

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

 It is also important to note that both Mr. Mowdy and Mr. Harvey have signed general releases as part of the Settlement, unlike any other class members.  Settlement Agreement at ¶ 14(i).  These releases necessarily require them to release *all* potential legal claims.  The service payments also recognize that Mr. Mowdy and Mr. Harvey have been personally impacted by their participation in this lawsuit as named plaintiffs because the petroleum truck driving industry is small and insular, and they have been forever branded as "complainers."  This is a critical factor in Plaintiffs' request for the Class Representative service payments.  Additionally, Mr. Mowdy's requested Class Representative service payment is $10,000 greater than that of Mr. Harvey's because Mr. Mowdy will be giving up his right to file a claim for retaliation against Defendants.  After filing this lawsuit, Mr. Mowdy was terminated from employment by a non-defendant petroleum trucking company.  Lawson Attorney Fee Dec. at ¶ 28.  Mr. Mowdy believes that his termination resulted from conversations between Defendants and his then-employer, and was solicited by Defendants in retaliation for filing this lawsuit.  *Id.*  Plaintiffs have not requested leave to amend their complaint to add a retaliation claim for Mr. Mowdy because of the pendency of Defendants' 23(f) appeal of the Court's decision on class

27
28

18

certification.  *Id*.  As part of the terms of this settlement, Mr. Mowdy has signed a general release

waiving all claims, including all potential retaliation claims.  Settlement Agreement at ¶ 14(i).

Under these circumstances, a Class Representative payment of $40,000 to Ron Mowdy

and $30,000 to Joaquan Harvey is fair and reasonable.  See, *e.g.*, *Brotherton v. Cleveland*, 141 F.

Supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving $50,000 class representative payment to

named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)

(approving an award of $50,000 for the named plaintiff); *Singer v. Becton Dickinson & Co.*, 2010

U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal. June 1, 2010) ("The $ 25,000 incentive award is . . .

well within the acceptable range awarded in similar cases."); *Glass v. UBS Financial Services.*,

2007 U.S. Dist. LEXIS 8476, 50-52 (N.D. Cal. Jan. 26, 2007) (Chesney, J) (approving $25,000

class representative payment).

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court

approve Class Counsel's request for an award of $3,850,000 in reasonable attorneys' fees,

$151,879.30 for reimbursement for litigation expenses incurred, and award Class Representative

service payments of $40,000 and $30,000, respectively, to plaintiffs Ron Mowdy and Joaquan

Harvey.


Dated:  January 13, 2012                           Respectfully submitted,

                                                   LAWSON LAW OFFICES

                                           By:    /s/ Antonio M. Lawson
                                                   ANTONIO M. LAWSON

                                                   Attorney for Plaintiffs and the Class